FILED 

JUL 1⁵5 2015 DC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTCT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SIDNEY R. MILLER ('Miller'), | ) |
| an individual, | ) |
| and | ) Case Number: 12 – cv – 10160 |
| | ) |
| 53rd – Ellis Currency Exchange, Inc., et al., | ) |
| ('Plaintiff currency exchanges', | ) Judge: **Hon. Gary Feinerman** |
| the currency exchanges') | ) Transferred to: **Hon. John Z. Lee** |
| Plaintiffs | ) |
| | ) Magistrate Judge: **Hon. Arlander Keys** |
| V. | ) |
| | ) |
| MICHAEL E. FRYZEL ('Fryzel'), et al., | ) |
| Defendants | ) |

**MOTION FOR RELIEF FROM JUDGMENT UNDER RULE 60(b)**

**NOW COMES Miller, individually, as Plaintiff** to seek relief in this Court from

its Judgment pursuant to FRCP Rule 60(b) and in support thereof states as follows:

1.      On July 15, 2014 this Court entered its Judgment in this matter. That

Judgment's Opinion cites only Amended Complaint allegations and Defendant docket

entries.

2.      Fed. R. Civ. P. 60(b) ('FRCP 60(b)') allows for relief from Judgment

under sub-sections (b)(1) or (b)(3) within one year after its entry.

3.      This Motion argues that this Court has proceeded without compliance with

Federal statute, rule and doctrine by failing to review the transferor court Record and

seek explanation of its recusal [122] as to the appearance of partiality. As a result, this

Court's Judgment is entered under its misconception of law and conflict with the clear

requirements and mandate of those Federal statutes.

4.      This Motion seeks this Court's vacatur of its Judgment for (i) judicial

mistake pursuant to the provisions of FRCP Rule 60(b)(1); and (ii) .

5. Such judicial mistake has occurred because this Court's Judgment (i) should be preceded, but is not, by this transferee Court's FRCP Rule 63 certification for the absence of partiality to ensure the pending motion to dismiss proceeding could be completed without partiality, as Rule 63 intends; (ii) is absent any review of the transferor Feinerman court Record in light of that court's recusal statement [122] as a *prima facie* showing of partiality under sub-section (a) of 28 U.S.C. 455 and inferring further partiality under sub-sections (b)(4) and (b)(5); (iii) is based on assignment of a Record with the appearance of partiality and that partiality is thereby embedded in its own Record and Judgment; and (iv) notwithstanding (i), (ii) and (iii) shows no review of the Feinerman court Record to determine that court's pre-trial decisions establishing Law of the Case ('LOTC') under that Federal doctrine, and Judgment findings conflict with that Court's discovery rulings to deprive Plaintiff of due process.

6. Pursuant to the provisions of 28 U.S.C. 455 this Court should have at minimum reviewed the Feinerman court Record but failed to do so and produced its Judgment in the absence of review, thereby embedding such partiality in its Judgment and rendering the Judgment subject to vacatur.

7. Pursuant to the provisions of FRCP Rule 63, this Court should have certified the Feinerman court Record, particularly in light of its recusal statement admitting partiality [122], and has not complied with Rule 63 and should not have proceeded or entered its Judgment but has done so, rendering the Judgment subject to vacatur.

8. Pursuant to LOTC doctrine as Seventh Circuit holds, this Court should have granted discovery by amending Feinerman court decisions prohibiting document

production so as to allow Miller to examine (11) corporations' books and records in Defendant Fryzel's possession to determine if he could proceed as director in good faith; instead, the Judgment has examined the contents of those books and records ex parte (in which event it should recuse itself under sub-section (b)(1) of 28 U.S.C. 455) or abuses its discretion by presumption that the content of those books and records is unnecessary to Miller's pursuit of this action for the corporations. In either event, the Judgment is subject to vacatur by the appearance of partiality.

9.      Also pursuant to LOTC doctrine, this Court should have allowed filing of Miller's Supplemental Response [116] and granted leave for his Sur-reply filing denied earlier [121]. (35B Corpus Juris Secundum ('CJS'); at 537, sec 1289 note [10]; citing *Wickens v. Shell Oil Co.*, 620 F.3d 747 (7th Cir. 2010))

10.     The Opinion's material findings show the Lee court's clear error as to findings of fact and conclusions of law. The Lee court has abused its discretion. The Opinion fails to show disposition of all claims and show Miller's futility in a further filing In finding for dismissal with prejudice, the Lee court abuses its discretion.

11.     Miller attaches his Memorandum of Law in support of this Motion.

**WHEREFORE, Miller prays** this Court vacate its Judgment pursuant to sub-section (b)(1) of Rule 60, and grant leave to file the Second Amended Complaint.

Respectfully submitted,

*Sidney R. Miller*

Sidney R. Miller, Plaintiff

P.O. Box 1948 / Chicago, IL 60690 / (847) 220 – 2926 / email: cxboss@gmail.com

## UNITED STATES DISTRICT COURT
## NORTHERN DISTICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **SIDNEY R. MILLER ('Miller'),** | ) | |
| an individual, | ) | |
| and | ) | Case Number: 12 – cv – 10160 |
| | ) | |
| **53ʳᵈ – Ellis Currency Exchange, Inc., et al.,** | ) | |
| **('Plaintiff currency exchanges',** | ) | Judge: **Hon. Gary Feinerman** |
| **the currency exchanges')** | ) | Transferred to: **Hon. John Z. Lee** |
| Plaintiffs | ) | |
| | ) | Magistrate Judge: **Hon. Arlander Keys** |
| V. | ) | |
| | ) | |
| **MICHAEL E. FRYZEL ('Fryzel'), et al.,** | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF FRCP RULE 60(b) MOTION FOR RELIEF FROM JUDGMENT

In its opening sentence, the Lee court Memorandum Opinion and Order [125] states: 'This derivative shareholder suit is but the most recent in a series of cases brought by Plaintiff Sidney Miller ('Miller') on behalf of eleven wholly-owned currency exchange corporations...' That language suggests the Lee court as with knowledge of the matter beyond the Motion to dismiss pleadings. The Lee court admits those pleadings to be the basis for its Opinion (case 10160; at [139]: '...The Court simply ruled on the papers before it...').

The Lee court admits it did not review the Feinerman court Record after re-assignment (id; at [139][122]). By its duty under Federal statute, rule and law of the case doctrine, the Lee court's failure to review the Feinerman Record for partiality is abuse of discretion sufficient for FRCP Rule 60(b)(1) relief as Judgment vacatur [124][125][126].

The Judgment and Opinion show additional such abuse. The Order's call for dismissal with prejudice is without sufficient support. The following arguments call for

such vacatur for judicial mistake and surprise and **excusable neglect under sub-section** (b)(1) of Rule 60.

## Statement of Facts, Controlling Law and Argument

Miller filed his Complaint, an attorney malpractice action against Defendant Fryzel, on December 19, 2012. The Complaint, Northern Illinois District Court case 12 – cv – 10160 ('case 10160'), was assigned to Judge Gary Feinerman. That Complaint is the re-filing of Miller's Amended Complaint voluntarily dismissed in case 11 – cv – 02395.

On May 12, 2014, unexpectedly, Judge Feinerman filed his notice of recusal [122]. The Judge's recusal statement is one sentence: **"**This Court has learned that a relative of the Judge has had a business relationship with one of the Defendants"..... That statement cites procedure IOP 13(f) but no statutory authority. FRCP Rule 63 committee notes admonish a judge to furnish reasons to show necessity. That statement provides insufficient substance to show authority. That statement does establish that his recusal bears the appearance of partiality under sub-section (a) of 28 U.S.C. 455 and infers also under sub-sections (b)(4) and (b)(5).

Feinerman court decisions establish Law of the Case ('LOTC') for several issues. In particular are (i) the denial of production of discovery documents in response to Miller's Motion [38] and renewed verbal motion in January [tr. ___ ]; (ii) the denial of Miller's motion at bench to file the Amended Complaint [35] with leave of court by *de facto* filing of that Motion for leave (initially omitted by excusable neglect) so as to preserve Miller's right to file his second Amended Complaint [82] as a matter of course under FRCP Rule 15; and (iii) the denial at bench of the IDFI motion to dismiss for sovereign immunity as incorrect in Federal court when those officials are operating

outside their statutory authority, as Miller argued. Transcripts confirm all such bench decisions. The Opinion [125] dismisses IDFI notwithstanding Record transcripts and pleading showing the Feinerman court as taking Miller's Amended Complaint naming of IDFI as with the particular officials alleged with liability.

Miller was denied filing of his Supplemental Response [114] and Sur- Reply [121]. For circumstances then and afterward, those denials deprived Miller of due process by disallowing him leave to make his record. Miller was unfairly burdened with repetitive overlapping Defendant pleadings in the November to February period. The Defendants themselves occasionally questioned whether the SAC should be briefed first.

Case 10160 was pending in the Feinerman court for 18 months. On May 12 the Feinerman court had scheduled a status hearing for May 29. That Court held the motion to dismiss proceeding as fully briefed. But the May 29 status shows that court's intent to hear other issues – or perhaps oral argument – before Judgment.

On May 12 Miller received the last transcript of Feinerman court proceedings from Court Clerk Zandi. Miller was then preparing a 28 U.S.C. 144 motion for disqualification for that Court's bias and prejudice but with recusal, that motion became moot.

After recusal Miller believed that the Lee's transferee court was reviewing the Feinerman court Record pursuant to FRCP Rule 63. Miller had no reason to suspect bias and prejudice in the Lee court. Under that presumption on May 12 and afterward Miller had no reason to move to disqualify the Lee court under section 144 or 455.

On May 28, Judge Lee struck the scheduled May 29 status hearing. Miller did not appear on May 29 and, despite various motions afterward, has never appeared in the Lee court. The Lee court has disposed all Miller motions without courtroom appearance.

Without further notice, the Lee court issued its Judgment on July 15. On July 16 Miller obtained a copy of that Judgment at the District Court Clerk's office.

**The Lee court Judgment: The Judgment findings show that the Judgment fails to rule either on the correct facts of case 10160 or applicable law or follow due process to produce its Judgment or remedy its error. The Judgment makes findings as follows:**

(a) *Dismissal of Miller's individual claims*: (i) The Judgment misconstrues Miller's response to Fryzel as a judicial admission that he is not pursuing individual claims ([125]; at 8, 9). The Judgment cites Geinosky (*id*; at 2, 'Background') and requires such judicial admission to be proper (Geinosky, id; at 746, fn [1]), not as here. The misconstrued statement is held controlling over the Amended Complaint's caption, allegations and court transcripts. (ii) The Opinion dismisses Miller individually without opportunity to contest or be heard before Order as Judgment. Such dismissal denies due process.

(b) *Dismissal of Defendants Keenan, Shack and Fryzel by denial of Miller's Rule 23.1 demand futility argument*: The Judgment finds 'not-applicable' the Aronson test' requirement that '...the plaintiff alleges particularized facts creating a reason to doubt that (1) the directors are disinterested and independent...' ([125]; at 11, par. 1) Miller alleges that he is sole director, officer and shareholder and that each corporation is an IRS Sub-chapter S entity, with income (loss) flowing annually to his tax return. Each

corporation's income (loss) is Miller's income (loss) ([35]; at ___, ___ ) *How can these allegations be taken otherwise than showing that there is a reasonable doubt Miller is disinterested?* The Judgment next denies Miller's argument that he cannot act as director because each corporation's books and records are admittedly held by Fryzel ([125]; at 3, par. 2); finding: '...The books and records at issue are limited to the finances of the currency exchange corporations and were not necessary for Miller to advance a RICO claim based on conspiratorial activities of Defendants...' *This finding is the Lee court admission that it has knowledge of the contents of documents denied for discovery by the Feinerman court. This is an example of the extrajudicial source for which recusal under sub-section (b)(1) of 455 is required.* Miller – no corporate director – could undertake an action for his corporation without possession and prior review of its records. Over the last 10 + years of Receivership, Shack and Fryzel could have entered anything into those books and records as Miller infers in alleging continuing misconduct ([35]; at 41, par. 45). In the face of this error, the Judgment abuses its discretion by concluding that dismissal with prejudice – i.e.; on the merits – is appropriate.

      (c) *Dismissal of IDFI on textual error for Sovereign Immunity*: The Judgment finds for dismissal of IDFI under Eleventh Amendment Sovereign Immunity ([125]; at 12, 13). This finding fails to take all Record facts into consideration, selecting with partiality to support its dismissal of IDFI. Within that Record is Miller's Response correcting that caption error ([79]; at ___ ) showing IFDI as Defendant without the names of those individuals liable for misconduct by acting outside their official capacities as the Amended Complaint and SAC allege. This Court's abuses its discretion by denying due process, dismissing Miller individually (i.e.; as a caption Plaintiff) without motion or

hearing despite case law in Seventh Circuit and elsewhere of caption error being textual, subject to amendment and not fatal by the IDFI allegations being as to specific individuals - (*Besecker v. St of Illinois*, 14 F.3d 309 (7th Cir. 1994); Kedra v. City of Philadelphia, 454 F.Supp. 652 (E.D. Pa 1978)); here, it takes textual error as grounds for IDFI dismissal despite the Amended Complaint allegations and Record pleadings as to its individuals. In its footnote [3], ([125]; at 13) the Judgment seeks to impute that misconstruction to Miller: '... [recognition of] the fatality of his claims against IDFI, Miller seeks to amend his [Amended] Complaint to substitute claims against five IDFI employees...' Afterward, the Judgment fails to name those five employees but distinguishes the misconduct of four of them from one who acted with 'tortuous independence'. Absent names, Miller cannot contest this finding. As the Feinerman court Record shows, Sovereign Immunity does not protect state officials in Federal Court if acting outside their authority, as the Amended Complaint and SAC allege.

(d) *Denial of Miller's Motions for Leave to Amend the* [Amended] *Complaint*: The Judgment text opens with this finding ([125]; at 13, par. C): 'The Court has thoroughly reviewed Miller's proposed pleadings and concludes that allowing further amendment would be futile.' The finding is conclusory. There is no factual support for that finding. The following arguments show its denial of leave to amend is abuse of discretion:

(i) **Miller's RICO complaint filing is within the SOL:** The Judgment finds that the Statute of Limitations ('SOL') has been exceeded and that Miller 'pleads himself out of court' ([125]; at 13-14, par. 2-2). By its conflict with other Opinion

findings and additional facts allowable under *Geinosky* (*id*; 675 F.3d 746 at note [1]) that finding is clear error.

   (1) The Opinion finds that 'the 'filing' of his RICO 'complaint' with the U.S. attorney is sufficient evidence that Miller was on notice of his potential RICO claim by November 3, 2008'(*id*; at 14, par. 2). A copy of that criminal complaint has not been filed in case 10160. If this court has obtained (a copy of) that complaint from an extrajudicial source – as with the currency exchanges' books and records – it should immediately recuse itself pursuant to sub-section (b)(1) of 28 U.S.C. 455 (*U.S. v. Widgery*, 778 F.2d 325 (7th Cir. (Ind.) 1985)). The Court's set off of 'filing' and 'complaint' with quote marks suggests skepticism as to document content. Given skepticism, the Opinion fails to explain how notice as to Miller's 'potential' RICO claim be drawn when the document has not been examined;

   (2) Within precedent *Barry Aviation*, the Opinion finds: 'RICO "cause of action accrues when the plaintiff knew or should have known that it had sustained an injury."' When fully stated that head note says:

> A cause of action accrues when the plaintiff knew or should have known that it had sustained an injury; *this rule is referred to as the discovery rule* because the accrual date is not determined when the injury occurs but when it is discovered or should have been discovered. (*Barry*, id; at 683, head note [8]; *emphasis* added)

The *Barry* discussion (*id*; at 688) explains application of the discovery rule when fraud, as here, is occurring. Citing *Cada v. Baxter Healthcare*, 920 F.2d 446, 450 (7th Cir. 1990) '...to the extent that Defendants in a fraud case conceal the fraud, "they postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of a fraud."'... This principle is based on the general rule that accrual occurs when the plaintiff discovers

that "he has been injured and who caused the injury." *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000)

(3) In November, 2008 Miller filed his *criminal* complaint because Continental Casualty's voluminous but repetitive discovery as to the currency exchanges' Surety Bonds suggested that a fraudulent *criminal* action for the $1,441,000 insurance proceeds might lie. Miller did not know he had a RICO *civil* injury or a *civil* cause of action;

(4) In November, 2008 Miller had not prepared or filed *any* Federal complaints. He did not then file a civil RICO action because he did not know that he had such authority under Federal law but, regardless, he could not have then prepared any Federal action with his insufficient technical knowledge. Miller was then without legal assistance. From his Illinois court experience, Miller understood that sanctions were possible if Federal complaints were without merit;

(5) Miller hoped that his criminal complaint would spark Federal authorities to pursue discovery curtailed in early 2004 in Illinois state courts. The U.S. Attorney's office referred Miller to the FBI as alleged. The fact that Federal criminal action pursuant to that complaint is not yet visible suggests that his complaint may not have shown sufficient or meritorious injury to cause Federal authorities to then act;

(6) It was not until summer, 2009 discussions that Miller understood there possibly was a cause of action available under civil RICO. Before then Miller's body of litigation had proceeded entirely within state court. Following his summer discussions and the September, 2009 Corus Bank Receivership soon afterward, Miller began research of Federal law and civil RICO.

(7) Miller then was unfamiliar with application and procedures of Federal law. Miller understood RICO to be a Federal criminal prosecution. He did not know that Federal law provided for a civil RICO cause of action or the requirements for a complaint so as to act on an 'injury' within a 'pattern of racketeering'. With the difficulties he had experienced in Illinois courts, Miller was hesitant to pursue any Federal action until he felt acquainted with that law;

(8) The Opinion erroneously selects November 3, 2008 as the time Miller's *civil* cause of action accrued. The Amended Complaint alleges Miller did not know of his cause of action until August, 2009 ([35]; at 39, par. 39). 'All reasonable inferences are to be drawn in Miller's favor.' ([125]; at 2, 'Background') The foregoing facts show that Miller was without knowledge to file a Federal civil RICO action in November. By denying conclusive weight to Miller's allegation, the Court abuses its discretion; and

(9) The earliest date for accrual of Miller's civil RICO action is August, 2009. The Opinion finds that Miller's RICO action was filed in December, 2012. On that basis, Miller timely filed his RICO action within the 4 - year SOL.

(ii) **The Opinion errs in denying equitable tolling by misapplying controlling law:** The Opinion finds that: 'The only way that Miller's claim can survive in light of these allegations is if it is equitably tolled...' This Motion shows [*supra*, at (d)(i)] that the RICO action is filed within the SOL. Notwithstanding that argument as conclusive, this (d)(ii) argument shows equitable tolling as a pleading claim:

(1) The Opinion ([125]; at 14, 15) cites *U.S. v. Marcello* (*id*; at 1010) for its findings that 'equitable tolling is granted sparingly' where 'extraordinary

circumstances far beyond the litigant's control...prevented timely filing.' The frequency of such grant is irrelevant as to the instance here; the grounds are whether extraordinary circumstances prevented timely filing, as shown *infra*;

(2) The Opinion cites Miller's 'proposed amended complaint' (i.e. the 'SAC', second amended complaint, *id*; at 15) for its purported argument that the SOL should be tolled because the U.S. Attorney would not act '...until the FBI weighed in on its merits...' The Opinion cites no specific location in the SAC for this purported argument. The Opinion may refer to the Amended Complaint paragraph related to those findings ([35]; at 7, par. 2 as: 'In November, 2008... might furnish relief.'). That paragraph alleges how Miller's efforts in diligently pursuing a criminal action lead to his civil action afterward, and not at all to support his claim of equitable tolling.

(3) Miller argues equitable tolling as a valid claim because of continued discovery suppression in Illinois, and now, Federal courts. The most recent example of such suppression is within case 10160. On September 16, 2013, as the Amended Complaint was being service upon Defendants, Miller moved the Feinerman court for leave to commence discovery ([38][39]). That court denied production but ordered Defendants to preserve documents ([41]). In January, that court denied Miller's renewed discovery motion at bench (tr. ___; at ____, l.____)

(4) Without such discovery Miller cannot determine: (a) the Plaintiffs' various claims; (b) the related Defendants and their particular liabilities; and (c) the continuing patterns of racketeering and related RICO Federal statutes (e.g. 18 U.S.C. 1341, etc.). Without such discovery, Miller cannot prepare a sustainable cause of action or pursue his claims at trial;

(5) The Amended Complaint makes numerous allegations as cause for discovery: (a) that the misconduct is continuing ([35]; at 40-41, par. 45); (b) "...that Miller and the Miller currency exchanges have been injured by Corus [officers], IDFI [officials] and CCC [employees] as to fraudulent concealment of facts in this matter to attempt to overrun the Statute of Limitations for filing this action..." ([35]; at 38, par. 35R); (c) "...in addition to material facts underlying this RICO action, Corus and IDFI concealed material facts depriving Miller and then-attorney Fioretti, et al, of defenses in the Cook County Receivership case (03 CH 18577), the Liquidation case (03 CH 10488), the Corus case (03 L 3909, consolidated), and the Surety Bond case (03 CH 12767)..." ([35]; at 33, par. 35C); (d) "...[A]fter Continental Casualty furnished documentation pursuant to Miller's 2007 production request, Miller began to unravel the Receivership improprieties following Shack's seizure..." ([35]; at 24, par. 32); and (e) "...Corus thus intended the Receivership to be its vehicle to recover loans and extensions of credit to Miller by any means, rightly or wrongly. Corus sought recovery by inappropriate transfer of funds, a fraudulent insurance claim and sale of Miller's stores pursuant to establishing a statutory Receivership, even by fraudulent accounting..." ([35]; at 24, par. 31C). After Continental Casualty began document production, Cook County granted their attorney leave to redact 400 documents within the disclosure. Thus, discovery production is necessary and properly sought in the Amended Complaint.

(6) The Opinion invokes *Cancer Foundation* for its finding that the 'discovery rule' – as controlling law here – is triggered by the discovery of the harm itself and not knowledge of the elements of the claim ([125]; at 15, par. 1). But *Cancer Foundation* finds that equitable estoppel, sometimes termed fraudulent concealment,

'suspends the running of the statute of limitations during any period in which the defendant took active steps to prevent the plaintiff from suing' (*Cancer*, id; at 676, note [5]), citing *Barry Aviation* (id; at 689), supra. As above, *Barry* cites *Cada* for its finding that "...self-concealing frauds do not extend the limitations period through equitable tolling but instead, *postpone the date of accrual* by preventing the plaintiff from discovering he is a victim of a fraud." (*Barry*, *id*; at 688)

(7) The Opinion's citations are applicable but not for the reasons the Opinion finds. For the 'fraudulent concealment' alleged in the Amended Complaint, the accrual date of the SOL is <u>postponed</u>, per *Barry* and *Cada.* Equitable tolling is not rendered inapplicable here; under *Cancer* (therein, disposing Defendants' fraud for lulling delays by equitable estoppel) instead, equitable estoppel applies.

(8) The Opinion errs by rendering equitable tolling inapplicable in the Amended Complaint. Equitable estoppel is applicable and postpones the accrual date such that the Amended Complaint is timely filed.

(9) By its Opinion finding, the Lee court abuses its discretion.

(iii) **The Opinion finds the 'proposed pleading' (apparently, the Amended Complaint) inconclusive as to stating a plausible claim, but its 'enterprise' example fails to confirm that finding.**

(1) The Opinion finds the Amended Complaint to be '...a jumble of names, dates, and legal citations...' lacking clarity as to Miller's claims ([125]; at 15-16, par. 2-1). This finding itself is quizzical, since the Opinion's Background section (id; at 2-8) furnishes an articulate summary of the Amended Complaint's claims and factual

allegations. The finding, though, is further reason for granting leave to amend to cure the jumble.

(2) For example, the Opinion presents the essence of Corus scheme to manufacture an impairment condition throughout the 11 - Miller store chain (*id*; at 4, par. 1: 'These transfers reduced each store's... Id par. 31B', inferring claims under RICO predicates 18 U.S.C. 1956, 18 U.S.C. 1005. For another example see the Paragraph 32 bifurcation scheme description (*id*; at 5, par. 2). Miller weighed alternative constructions of these facts in layman's terms. Numerous claims relate to banking and currency exchange accounting for which most readers have no technical familiarity. The Background shows that Miller's efforts may have reached the Court's law clerks.

(3) Soon after the Amended Complaint was filed, Miller announced at bench that he was preparing a second Amended Complaint ('SAC') to present Plaintiffs' claims with greater clarity and organization. Miller filed the SAC on January 2, 2014.

(4) The Opinion ([125]; at 15-16) finds the Amended Complaint fails to properly plead an 'enterprise'; here, the Receivership itself. The Receivership is a statutorily – defined entity (at 205 ILCS 405, sec 15) and fits the RICO definition for an entity (at 18 U.S.C. 1961 sub-section (4)). The Opinion's description of necessary structure, etc., for an 'enterprise' is within the section 15 description.

(5) The Opinion seeks to impute a pleading defect where there is none. The Receivership is an entity with a structure, authority and duties, regardless of how Defendants' Shack and Fryzel acted toward it. Shack and Fryzel have never filed a final Receivership report as required under the Act (205 ILCS 405; at section 15.1d.)

(6) The Opinion fails to demonstrate that the 'enterprise' is a pleading defect. The Opinion fails to show that the Amended Complaint has no merit as a pleading.

(iv) **The Opinion finds that grant of leave to file an SAC would be futile. The Opinion's findings fail to support that conclusion. Leave to file an SAC is proper.** The Opinion fails to show that Miller's Amended Complaint is without merit. The arguments this Memorandum provides show that the Amended Complaint has no defects that cannot be cured by amendment. Seventh Circuit law includes cases showing the District Court extending pleading to a third amended complaint (*Starrels v. First National Bank of Chicago*, 870 F.2d 1168 (7th Cir. 1989)) The Opinion fails to furnish any substantive reason for dismissal with prejudice or denial of leave to amend the Amended Complaint. ([125]; at 16-17)

**Miller's post-Judgment Rule 59 Motion:** After review of that Judgment Opinion, Miller began to prepare a FRCP Rule 59 Motion to Vacate or Amend the Judgment. Despite a concurrent bout – the first of several with influenza over the 2013 / 2014 winter – Miller timely filed a Rule 59 Motion on August 12 [127]. Miller is separately preparing his motion to contest this Court's denial of his Rule 59 Motion. [147]

## Conclusion

The Judgment Opinion fails to make findings showing the Amended Complaint to be without merit and for amendment to be futile. The Judgment fails to show that dismissal with prejudice is proper and that leave to file a Second Amended Complaint should be denied.